UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――x
ACTIVE MEDIA SERVICES, INC., d/b/a       :
ACTIVE INTERNATIONAL,                    :
                                         :          OPINION AND
       Plaintiff,                        :          ORDER
                                         :
       v.                                :          08-CV-6301 (ER)
                                         :
CAC AMERICAN CARGO CORP., ALL            :
WORLD INTERNATIONAL SHIPPING, INC.,      :
d/b/a AWIS,                              :
                                         :
       Defendants.                       :
―――――――――――――――――――――――x

RAMOS, D.J.:

   Plaintiff Active Media Services, Inc. ("AMS"), contracted with Defendant All World International Shipping, Inc. ("AWIS"), to arrange for a shipment of televisions to be transported from New York to Florida. AWIS hired Defendant CAC American Cargo Corp. ("CAC") to transport the shipment by truck. The televisions were stolen en route.

   AMS then sued CAC and AWIS, claiming that both were liable under the Carmack Amendment, 49 USC § 14706, a federal statute which regulates carriers. AMS also claimed that AWIS was liable under New York state law for negligence. Both AMS and AWIS have filed cross-motions for summary judgment. For the reasons set forth below, the Court GRANTS summary judgment to AWIS on the Carmack Amendment claim and DENIES summary judgment to AMS on the same. The Court DENIES summary judgment to both Parties on the negligence claim.

**I. BACKGROUND**

    **A. Facts**

AMS, a Delaware corporation with its principal place of business in Pearl River, New York, sought to transport a shipment of televisions from Ellenville, New York to a hotel in Miami, Florida in January 2008. The value of the shipments was approximately $250,000. To arrange the shipment, AMS retained AWIS, a corporation with its principal place of business in Florida, to broker the transaction. AWIS in turn chose CAC to serve as the carrier for AMS's shipment. Pl.'s Rule 56.1 Statement ¶ 1; Def.'s Response ¶ 1.

AWIS admits that it had never used CAC as a carrier prior to the AMS shipment, Pl.'s Rule 56.1 Statement ¶ 2; Def.'s Response ¶ 2, but nonetheless contends it conducted sufficient due diligence on CAC. For example, AWIS confirmed that CAC was licensed to operate by the Federal Motor Carrier Safety Administration (FMCSA), Def.'s Rule 56.1 Statement ¶ 7; Pl.'s Response ¶ 7, and obtained a copy of CAC's insurance certificate. Pl.'s Rule 56.1 Statement ¶ 15; Def.'s Response ¶ 15. However, AWIS did not obtain a copy of CAC's insurance policy, *id.* ¶ 15; Def.'s Response ¶ 15, and failed to verify that the particular truck that transported AMS's shipment was covered under CAC's insurance policy.[1] *See id.* ¶ 11; Def.'s Response ¶ 11.

Between 2005 and the date when CAC picked up AMS's shipment in January 2008, the FCMSA had revoked CAC's license to operate as a common carrier on four separate occasions. Compl., Ex. A at 9. However, the report AWIS retrieved during its due diligence revealed only three revocations. Pl.'s Rule 56.1 Statement ¶ 18; Def.'s Response ¶ 18.

During the course of the negotiations AWIS recommended that AMS pay extra for a second driver, and Johnny Gonzalez, an AMS representative, conceded in his deposition that

---

[1] AMS notes that AWIS itself was not insured, and AWIS admits that it does not have a "professional liability policy," only a general liability policy. Pl.'s Rule 56.1 Statement ¶ 29; Def.'s Response ¶ 29.

AMS chose not to pay for a two-person team of drivers.  *See* Deposition of Johnny Gonzalez at 13; *see also* Def.'s Ex. 6.[2]

CAC picked up the shipment on January 4, 2008.  Pl.'s Rule 56.1 Statement ¶ 4; Def.'s Response ¶ 4.  But the shipment never got to Miami.  The driver reported to the police that the truck had been stolen at a truck stop near Brunswick, Georgia.  Martin Dec., Ex. D.  CAC's insurer denied the claim for loss on the ground that the vehicle listed in the police report was not covered under CAC's insurance policy.  Martin Dec., Ex. J.

**B. Procedural History**

AMS filed its Complaint on July 14, 2008.  It alleged two causes of action: (1) "carrier liability" under the Carmack Amendment to the Interstate Commerce Act, 49 USC § 14706, against CAC and AMS, and (2) "broker liability for negligent entrustment" under New York state law against AWIS.  Compl. ¶¶ 9-10, 20.  AWIS answered and filed a cross-claim against CAC.[3]

CAC failed to answer or otherwise respond, and on April 14, 2009, the district court entered a judgment of $250,595.87 plus interest and fees against CAC.

After discovery was completed, the Parties cross-moved for summary judgment.  The case was then reassigned to this Court.

---

[2] AMS points to a letter AWIS sent to CAC after the incident, which appears to list two drivers.  *See* Declaration of Thomas C. Martin in Support of Plaintiff's Cross-Motion for Summary Judgment ("Martin Dec."), Ex. F.  It is not clear from the record whether there were in fact two drivers, but it is clear that AMS specifically chose not to pay for two drivers.

[3] On January 28, 2009, AWIS filed an Amended Answer with the additional defense that it was not liable due to an intervening criminal act.

**II. DISCUSSION**

    **A. Summary Judgment Standard**

Summary judgment is granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, a district court is instructed not to "weigh evidence," but to "resolve all ambiguities and draw all inferences in favor of the non-moving party" so as to ascertain "whether any reasonable trier of fact would have to conclude that the evidence was so strongly in the defendant's favor that there remained no genuine issue of material fact for it to resolve." *Nagle v. Marron*, 663 F.3d 100, 105 (2d Cir. 2011).

    **B. Carmack Amendment Claim**

AMS's first cause of action against AWIS arises under the Carmack Amendment, 49 U.S.C. § 14706. The Carmack Amendment created "a national scheme of carrier liability for goods damaged or lost during interstate shipment under a valid bill of lading." *5K Logistics, Inc. v. Daily Exp., Inc.*, 659 F.3d 331, 335 (4th Cir. 2011) (Wilkinson, J.) (quotation omitted). The Second Circuit has said that the Carmack Amendment "imposes something akin to strict liability on shippers." *Mitsui Sumitomo Ins. Co., Ltd. v. Evergreen Marine Corp.*, 621 F.3d 215, 216 (2d Cir. 2010).

Because Congress intended the Carmack Amendment to create a "uniform nationwide scheme of statutory remedies," for carrier liability, "it has long been interpreted to preempt state liability rules pertaining to cargo carriage, either under statute or common law: 'Almost every detail of the subject is covered so completely [by the Carmack Amendment] that there can be no rational doubt but that Congress intended to take possession of the subject and supersede all state

regulation with reference to it.'"  *5KLogistics*, 659 F.3d at 335 (quoting *Adams Express Co. v. Croninger*, 226 U.S. 491, 505-06 (1913)).

But the Carmack Amendment only applies to "motor carriers and freight forwarders."  49 U.S.C. § 14706(a)(1).  The statute that defines "carrier" for the purpose of the Carmack Amendment distinguishes between a carrier and a broker, which it defines as "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation."  49 U.S.C. § 13102(2).

Accordingly, courts have repeatedly held that the Carmack Amendment does not apply to brokers.  *See Commercial Union Ins. Co. v. Forward Air, Inc.,* 50. 2d 255, 257 (S.D.N.Y. 1999); *5KLogistics*, 659 F.3d at 335-36; *Chubb Group of Ins. Companies v. H.A. Transp. Systems, Inc.*, 243 F.Supp.2d 1064, 1068-69 (C.D. Cal. 2002); *Travelers Ins. v. Panalpina Inc.*, No. 08-C-5864, 2010 WL 3894105, at *4 (N.D. Ill. Sept. 30, 2010).

At no point in its Complaint does AMS allege AWIS was acting as a carrier here.  In fact, the Complaint defines AWIS as "a federally licensed broker of goods in interstate transportation."  Compl. ¶ 3.  The Complaint also calls its negligence claim, which it alleges against AWIS only, one for "broker liability."  *Id.* ¶ 16.

However, in its motion for summary judgment, AMS seeks to expand AWIS's role and claims AWIS "held itself out to the general public as a motor carrier and thus subjected itself to the liability of a motor carrier" under the Carmack Amendment, citing to *Travelers*, 2010 WL 3894105, for this proposition.  Def.'s Mem. in Support of its Motion for Summary Judgment at 5.

5

AMS offers five factual arguments in support of its position.  First, "AWIS adverti[s]ed itself as if it were a carrier."  *Id.* at 18.  Second, AMS "relied on AWIS regarding handling of the shipment."  *Id.*  Third, "AWIS controlled the motor carrier's operations as AWIS required the motor carrier to report to AWIS."  *Id.* at 19.  Fourth, "AWIS did not tell [AMS] that [CAC] was receiving the freight."  *Id.*  Fifth, "AWIS issued [an insurance] claim on behalf of [AMS] and [AMS] issued its own cargo loss claim upon AWIS, not CAC."  *Id.*

AMS is correct that entities that hold themselves out to be carriers may be subject to carrier liability, but only if they hold themselves out as carriers *in the specific transaction at issue*.  As the *Travelers* court said, "the heart of the analysis is the relationship between the two relevant parties."  2010 WL 3894105 at *6.

Although AMS now claims that AWIS was holding itself out as a carrier, the record indicates that AMS understood AWIS to be acting as a broker.  Johnny Gonzalez, the AMS employee who personally coordinated the shipment with AWIS, testified in his deposition as follows:

Q: Is it fair to state that a surface transportation broker is more of an intermediary?

A: Yes, definitely.

Q: During the time that you worked at [AMS], did you have any dealing with [AWIS]?

A: Yes.

Q: What kind of dealings?

A: AWIS was the main broker that [AMS] had chosen to work with for all of their projects . . .

Q: And what kind of partnership was it?  Was it as a broker, a carrier, or [a Non-Vessel Operating Common Carrier]?

A: No.  They were a broker.  They were a broker.

6

Deposition of Johnny Gonzalez, 10-11.

Mr. Gonzalez's statements distinguish this case from the cases AMS cites.  In *Travelers*, for example, the only testimony offered to establish that the defendant was a broker rather than a shipper came from agents of the defendant.  *See Travelers*, 2010 WL 3894105, at *6 (explaining that the defendant's "references to his own company throughout his deposition as a 'broker' or 'middle man' does not create a dispute as to [defendant's] status.").

Another case AMS cites, *AIOI Ins. Co. v. Timely Integrated, Inc.*, No. 08 Civ. 1479(TPG), 2009 WL 2474072 (S.D.N.Y. Aug. 12, 2009), is likewise distinguishable, because in that case an employee of the company which had its goods shipped stated in an affidavit that the defendant held itself out to the company to be a motor carrier.  *Id.* at *2.  Here, Mr. Gonzalez, the AMS employee with responsibility for the transaction, repeatedly admits he understood AWIS to be acting as a broker.

None of AMS's arguments are viable in light of Mr. Gonzalez's deposition testimony.  Even if AWIS's advertisements suggest that they have the capacity to act as both a carrier and a broker, Mr. Gonzalez was clear that in this case AWIS was merely acting as a broker.  *See also Chubb*, 243 F.Supp.2d at 1069-70 (finding no genuine dispute of material fact as to defendant's status as a broker, notwithstanding some advertising suggesting it was a carrier).  AMS's argument that it "relied on AWIS regarding handling of the shipment" cites to the deposition of AMS corporate vice president Christopher Noble, Def.'s Mem. at 18.  However, as he makes clear in his testimony, Mr. Noble did not know whether AWIS was acting as a broker or carrier.[4]

None of the other factors AMS points to create indicia of AWIS's "control" of CAC.  That AWIS had drivers check in to AWIS might make AWIS a responsible broker, but it does

---

[4] Mr. Noble stated in his deposition that he did not know the capacity in which AMS hired AWIS and later that AMS hired AWIS "as the carrier or the broker."  Deposition of Christopher Noble at 19.

not make it the carrier. AMS provides no legal authority to find otherwise. That AMS was not told the name of the carrier does not negate the fact that AMS retained AWIS for a particular purpose. Finally, which company issued insurance claims reveals nothing about the relationship as the Parties understood it at the time they agreed to work together.

Because there is no genuine dispute of material fact that AWIS acted only as a broker in this transaction, the Carmack Amendment is inapplicable and Court DENIES summary judgment to AMS on its first claim and GRANTS summary judgment to AWIS.

### C. Negligence Claim

AMS claims that AWIS is liable as a broker for "negligent entrustment" under New York law. It is well settled that state law remedies are available against a surface transportation broker. "[M]ost courts hold that brokers may be held liable under state tort or contract law in connection with shipments." *Chubb*, 243 F. Supp. 2d at 1069 (collecting cases and applying California contract and negligence law to a broker).[5] But AMS has not explained how the facts it alleges could meet the elements of a *negligent entrustment* claim. And neither AMS nor AWIS have even mentioned New York's choice of law rules, which would determine which

---

[5] One case has suggested otherwise. *See Commercial Union*, 50. 2d 255, 259-60. In *Commercial Union*, the court explicitly declined to consider "whether the claims in this action [against a surface transportation broker] should be considered to have arisen under state or federal common law," *id.* at 259, because the contract with the broker had a limitation of liability provision that would be binding under both theories.

But in dicta the *Commercial Union* court nonetheless speculated that, "there is a strong argument that the Carmack Amendment preempts all state remedies by a shipper relating to the shipper's compensation for damage to property transported in interstate commerce by a carrier, including those state law claims that are asserted against defendants whose liability is not specifically provided for in the Amendment. This conclusion would leave to federal common law the issue of such claims against a broker." *Id.*

However, as discussed above, the Carmack Amendment does not apply to brokers. For this reason, other district courts have relied on state common law because no authority suggests that Carmack Amendment's broad preemption of state law claims against carriers should be extended to brokers.

state's substantive law should apply.[6]  Instead, each of the Parties simply assert—with no further discussion or authority—that the law of its respective state of residence should apply.

The Parties' inadequate briefing, however, does not dispose of this claim because AWIS has alleged facts that state a conventional negligence claim.  The Second Circuit has held that even when a plaintiff "might have stated [a] claim . . . more artfully," a court should not dispose of a claim when "the essential elements of the charge do appear in the complaint."  *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 569 (2d Cir. 2000).  The panel explained that, "[u]nder [Federal Rule of Civil Procedure] 15(b), a district court may consider claims outside those raised in the pleadings so long as doing so does not cause prejudice."  *Id.*

The Complaint recites the elements of a straightforward negligence claim.  AMS alleged that AWIS "owed a duty to [AMS] to select a qualified, proper, reputable and/or otherwise responsible motor carrier."  Compl. ¶ 16.  It then alleges that AWIS "breached its duty of care owed to [AMS] in that it failed to properly evaluate or vet the credentials of the carrier" CAC.  *Id.* ¶ 17.  Finally, AMS alleges the breach caused an injury.  *See id.* ¶ 21.

AWIS was undoubtedly aware of—and did in fact conduct discovery on—the disputed issue in both the negligent entrustment claim that AMS asserted it was pleading and the negligence claim it actually pled:  namely, whether AWIS was negligent in investigating and hiring CAC to transport AMS's shipment.  Accordingly, the Court finds that AWIS will suffer no prejudice by construing AMS's second claim as one for negligence.

On a conventional negligence claim against a transportation broker, there is no relevant difference between New York and Florida law.  One district court has held that a plaintiff's negligence claim against a transportation broker under Florida law should be analyzed under

---

[6] "A federal court sitting in diversity jurisdiction applies the choice of law rules of the forum state."  *Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 433 (2d Cir. 2012).

"general negligence principles." *Professional Communications, Inc. v. Contract Freighters, Inc.*, 171 F.Supp.2d 546, 552 (D. Md. 2001). The court explained that on the plaintiff's claim, as on any "claim of negligence, a plaintiff must prove that: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; [and] (3) [that] the breach by the defendant was the actual and proximate cause of a demonstrable injury suffered by the plaintiff." *Id.*

No authority indicates that New York law would be different. *See, e.g.*, *Nipponkoa Ins. Co., Ltd. v. C.H. Robinson Worldwide, Inc.*, No. 09 Civ. 2365 (PGG), 2011 WL 671747, at *8 (S.D.N.Y. Feb. 18, 2011) (declining to resolve whether defendant acted as a carrier or a broker but dismissing state law negligence claims for failure to meet the elements of negligence).

The Court need not decide at this juncture whether New York or Florida law will ultimately apply because under either New York or Florida law—although AMS has adequately *pled* a claim for negligence—AMS has not yet *established* AWIS's negligence, and substantial question of facts remain. Therefore, the Court cannot resolve at this stage whether AWIS was negligent in its investigation and hiring of CAC.

AMS has identified facts that, taken together, could arguably lead to a finding of negligence. First, AWIS hired CAC despite never having used CAC as a carrier prior to the AMS shipment. Second, AWIS hired CAC despite knowing that CAC's license had been revoked at least three times. Third, AWIS failed to discover that CAC's license had actually been revoked four times. Fourth, AWIS did not obtain a copy of CAC's insurance policy. Fifth, AWIS did not verify that the truck that actually transported AMS's shipment was covered under CAC's insurance policy. Finally, the fact that AWIS itself did not have a professional liability policy, heightens the importance of its knowledge of CAC's insurance policy. But a court will deny summary judgment on negligence when a plaintiff's argument amounts to "'merely some

evidence which the jury may consider on the question of defendant's negligence' along with other relevant evidence bearing on that issue." *Saft v. Tishman Const. Corp.*, No. 93 CIV. 4140 (LMM), 1999 WL 102766, at *6 (S.D.N.Y. Feb. 25, 1999) (quoting *Rizzuto v. L.A. Wenger Contracting Co., Inc.*, 693 N.E.2d 1068, 1071 (N.Y. 1998)) (internal quotation omitted).

AWIS has also identified some countervailing facts. For example, AWIS did verify that CAC was duly licensed to operate by the FMCSA, and, it did obtain a copy of CAC's insurance certificate. AWIS has also suggested that AMS was contributorily negligent in not paying for a two-person team of drivers, which AWIS contends would have allowed the shipment to be driven straight through to Florida without stopping in Georgia. *See* Deposition of Johnny Gonzalez at 13; *see also* Def.'s Ex. 6.

Based on these facts, the Court cannot conclude at this stage "whether any reasonable trier of fact would have to conclude that the evidence was so strongly in [either party's] favor that there remained no genuine issue of material fact for it to resolve." *Nagle*, 663 F.3d at 105. Accordingly, the Court DENIES AMS's and AWIS's motion for summary judgment on the negligence claim.

### III. CONCLUSION

On AMS's first claim, because there is no genuine dispute of material fact that AWIS acted as a broker for the purpose of the Carmack Amendment, as defined in 49 U.S.C. § 13102(2), the Court DENIES summary judgment to AMS and GRANTS summary judgment to AWIS on the same.

On AMS's second claim, the Court concludes that there is a genuine dispute of material fact as to AWIS's negligence. Therefore, the Court DENIES summary judgment to AMS and to

AWIS. The Parties are directed to appear for a status conference on October 9, 2012 at 10:30 a.m.

    The Clerk of the Court is respectfully directed to terminate these motions (Doc. 60).

It is SO ORDERED.

Dated: September 26, 2012
White Plains, NY

                                                Edgardo Ramos, U.S.D.J.